**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DENISE SZYMCZYK | ) | |
| Plaintiff, | ) | No. 1:22-cv-00808 |
| v. | ) | |
| JOSE GUILLEN | ) | JURY DEMANDED |
| Defendant. | ) | |

## COMPLAINT AT LAW

Plaintiff, Denise Szymczyk ("Szymczyk") by her attorneys, Lynch Thompson LLP, and for her Complaint at Law against Defendant Jose Guillen ("Guillen") states as follows:

## PARTIES

1. Plaintiff Denise Szymczyk is an individual residing in Chicago, Illinois.

2. Szymczyk is the owner of a feline sanctuary called Gypsy Cats NFP Inc. ("Gypsy Cats").

3. Upon information and belief, Defendant Jose Guillen is an individual residing in Melrose Park, Cook County, Illinois.

4. Guillen was employed by the State of Illinois Department of Agriculture (the "IDA") for at least thirteen years.

5. Non-Party IDA is a department of the Illinois state government, created by statute 20 ILCS 5/5-15. The departmet regulates and administers various facets of the agriculture industries of Illinois, including but not limited to administering regulations concerning animal care and control, and controlling "licensure and inspection" of "kennel operators, . . . animal shelters, [and] day care operators."

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. Section 1983 to address the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution.

1

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

8. At all relevant times, Szymczyk has resided in Cook County, Illinois.

9. At all relevant times, Defendant Jose Guillen has been a resident of Cook County, Illinois, and was an employee of the IDA.

10. A substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

11. Accordingly, venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

12. Szymczyk owns and operates Gypsy Cats, formerly a cat rescue – now a sanctuary. Gypsy Cats is registered and is in good standing as a 501C3 organization in Illinois.

13. On February 16, 2021, Szymczyk was contacted by the administrator of a grant program who informed Szymczyk that, in order to participate in the grant program, Gyspy Cats would need either a shelter license from the IDA or a letter of exemption from the IDA. The grant program would provide valuable resources for Gypsy Cats that would improve the care that Gypsy Cats could provide for its animals.

14. In order to move forward with the grant program process, Szymczyk submitted an application and paid the requisite fee to the IDA on February 17, 2021.

15. On February 25, 2021, Szymczyk received a call from an employee of the IDA who stated she did not believe Szymczyk was required to obtain a license and was therefore wondering why Szymczyk applied for the license. The caller informed Szymczyk that she would discuss with the IDA's legal department, and that they would render a final decision and let Szymczyk know. Szymczyk asked for a letter of exemption in the event the IDA made a final determination that Gypsy Cats did not need a license.

16.     On March 3, 2021, Inspector Guillen called Szymczyk to schedule an inspection and they agreed on March 11th.

17.     Because the purpose of the inspection was to receive the valuable grant funding for her feline sanctuary, Szymczyk placed great importance on the inspection.

18.     Szymczyk operates Gypsy Cats from her home, so the inspection necessarily took place at her home.

19.     On March 11, 2021, Inspector Guillen arrived for the inspection. Inspector Guillen initiated conversation with Szymczyk and not moments after arriving Inspector Guillen began to intrude on Szymczyk's personal space, including brushing his body against her breasts as he entered her house.

20.     Once inside her residence, Inspector Guillen continued to make conversation with Szymczyk. His comments, however, went beyond the subject of the inspection and of Szymczyk's organization. Inspector Guillen started commenting on Szymczyk's appearance and on her body, stating that she looked younger than she was and telling her "You look great, you're in great shape."  As their conversation continued and became more unprofessional, Szymczyk became increasingly uncomfortable. However, she continued with the inspection, given the weight of the results of the inspection on the future of her organization.

21.      As they moved about the house, Inspector Guillen began to engage in nonconsensual physical contact with Szymczyk. After commenting on a photo as they were going downstairs, Inspector Guillen placed his hand on the middle of Szymczyk's upper back.

22.     The inspection continued, with Inspector Guillen examining every part of Szymczyk's home, including bathrooms (peering behind the shower curtain) and bedrooms.

23.     As the inspection continued, Inspector Guillen engaged in additional inappropriate and nonconsensual physical contact with Szymczyk. At one point, as Szymczyk stood bent over a

table to read a passage of the Animal Welfare Act on Inspector Guillen's cellphone, Inspector Guillen moved closer to her, close enough for the side of Inspector Guillen's thigh to come into contact with her thigh. Inspector Guillen then placed his left hand on Szymczyk's upper back and slid his hand down to her buttocks, startling Szymczyk and causing her distress.

24. After stating again that he would recommend Szymczyk for a license, they walked outside of the house and Szymczyk thanked him for the recommendation and offered a handshake. Instead of a professional handshake, Inspector Guillen pulled Szymczyk into a hug and moved his hand from her back to her buttocks. At no time did he ask for consent to engage in any physical contact and, aside from a courtesy handshake, Szymczyk offered no such consent. Szymczyk was frozen and caught by surprise with each inappropriate contact. She feared for her safety, as well as the outcome any retaliatory actions would have on her ability to obtain a license and grant program funding. Additionally, Szymczyk feared she would lose her license and feared the outcome of that loss on the life and safety of the rescue animals, many of whom have special needs and require extraordinary care.

25. After receiving her initial license in March and a renewal license in May, on May 18, 2021, Jose appeared unannounced on Szymczyk's front porch, with no clipboard in hand. Szymczyk was on her way out, but offered a greeting and asked if they had scheduled an appointment of which she was not aware. Inspector Guillen stated that he thought he would stop by and "see how you and all the kitties are doing."

26. The idea that Inspector Guillen could (and did) show up at any time to her home – and just days after receiving her renewal license – frightened Szymczyk. Szymczyk contacted the IDA to ensure she was in good standing with the IDA and to voice her concern that, as a single woman, this man could arrive at any time at her home under the authority of the State. Szymczyk received a call back from an employee of the IDA ensuring her nothing was wrong, that she did

4

not understand the nature of Szymczyk's concern and that inspectors can come any time unannounced "because not everyone is as conscientious as you are."

27. On May 27, 2021, Inspector Guillen conducted a second inspection of Szymczyk's home. Upon his arrival, it became clear that Inspector Guillen did not know that Szymczyk had obtained a license or that she had retained a renewal – which caused alarm, as she did not understand the purpose of his visit.

28. Almost immediately, Inspector Guillen began to once again comment on Szymczyk's figure. As she moved to physically create space between the two of them, Inspector Guillen more than once moved closer and pressed his thigh against the backside of her body. He continued to follow around her home, including into a guest room, attempting to make physical contact with Szymczyk.

29. The incidents involving Guillen caused Szymczyk great distress. Szymczyk lives in a constant state of fear for her safety and for the life and safety of the animals in her care. The idea that Guillen knows where she lives and can (and does) show up without notice and invade her home and personal space and the space where she cares for her animals, has frightened Szymczyk, who has experienced great anxiety and emotional distress. Szymczyk suffers from a fear that she will run into Guillen either at home or out in the community. Szymczyk was compelled to purchase a security camera out of fear for her safety as a result of Guillen's conduct.

### COUNT I – Violation of 42 U.S.C. §1983
**(Szymczyk Against Defendant Jose Guillen in his individual capacity)**

30. As and for its Paragraph 30, Szymczyk adopts and re-alleges paragraphs 1 through 29 as if fully restated herein.

31. Szymczyk is a female and is a member of a protected class.

32. Szymczyk was similarly situated to individuals who are not of the protected class such as male pet shop and animal sanctuary owners.

33. Guillen treated Szymczyk differently than other similarly situated male pet shop and animal sanctuary owners without a legitimate governmental purpose of doing so.

34. Guillen's actions with respect to Szymczyk were motivated by a discriminatory purpose, in violation of Szymczyk's constitutional rights to equal protection under federal law.

35. Szymczyk was deprived of a constitutional right, and Inspector Guillen was personally involved in the constitutional violations of Szymczyk.

36. Guillen acted under color of state law.

37. Guillen exercised responsibilities pursuant to Illinois state law, such as the Illinois Animal Welfare Act and Animal Welfare Rules.

38. Guillen's conduct described above was related to his state-conferred authority.

39. Acts committed by Guillen related to the performance of inspector duties.

40. Guillen misused the power possessed by virtue of state law.

41. Guillen's conduct was made possible only because he was clothed with the authority of state law.

42. Szymczyk suffered damages as a direct and proximate result of the equal protection violation.

WHEREFORE, Szymczyk respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

## COUNT II – Battery
**(Szymczyk Against Defendant Jose Guillen)**

43. As and for its Paragraph 43, Szymczyk adopts and re-alleges paragraphs 1 through 29 as if fully restated herein.

44. Guillen's conduct described in the foregoing paragraphs, was done intentionally and knowingly, without legal justification.

45. Guillen's conduct was unpermitted, unauthorized, and without Szymczyk's consent.

46. Guillen's conduct involved making physical contact with Szymczyk.

47. Guillen willfully touched Szymczyk without her consent.

48. Szymczyk suffered damages as a direct and proximate result of Guillen's conduct.

49. Szymczyk was discouraged from reporting her claim or bringing this action sooner because of her fear that she would face retaliation as a result of reporting.

WHEREFORE, Szymczyk respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

## COUNT III – Illinois Gender Violence Act 749 ILCS 82/5
**(Szymczyk Against Defendant Jose Guillen)**

50. As and for its Paragraph 50, Szymczyk adopts and re-alleges paragraphs 1 through 29 as if fully restated herein.

51. Defendant Jose Guillen's conduct, as described in the foregoing paragraphs, was insulting and offensive.

52. Guillen's conduct was done intentionally and knowingly, without legal justification.

7

53. Guillen's conduct was unpermitted, unauthorized, and without Szymczyk's consent.

54. Guillen's conduct included making physical contact of an insulting or provoking nature with Szymczyk.

55. Guillen willfully touched Szymczyk without her consent.

56. Guillen's conduct satisfies the elements of battery under the laws of Illinois.

57. Guillen's conduct was committed on the basis of Szymczyk's sex.

58. Guillen's conduct was of a sexual nature.

59. Guillen's conduct was committed under coercive conditions in that Guillen was an IDA employee who was in a position of power over Szymczyk and took advantage of his authority over Szymczyk.

60. Guillen's conduct included threats which caused Szymczyk's realistic apprehension that Guillen would commit the acts threatened.

61. As a direct and proximate result, Szymczyk suffered damages.

WHEREFORE, Szymczyk respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

### COUNT IV – Negligent Infliction of Emotional Distress
**(Szymczyk Against Defendant Jose Guillen)**

62. As and for its Paragraph 62, Szymczyk adopts and re-alleges paragraphs 1 through 29 as if fully restated herein.

63. As a state employee who had the authority to inspect Szymczyk's business, Guillen owed Szymczyk a duty of care when he entered Szymczyk's home feline sanctuary to carry out his inspection duties vested by laws and by the IDA.

64. It is reasonable for Guillen to foresee that misusing his position of power for sexual benefits can cause Szymczyk severe emotional distress.

65. Guillen misused his position of power and breached the duty of care as a state employee by engaging in ongoing and continuous sexual harassment against Szymczyk.

66. Guillen's conduct caused injury to Szymczyk.

67. Guillen's extreme and outrageous barrage of harassment resulted in Szymczyk's reasonable emotional distress.

68. Szymczyk's injury was directly and proximately caused by Guillen's breach of duty of care.

WHEREFORE, Szymczyk respectfully requests entry of a judgment in her favor and against Defendant Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

Dated: February 14, 2022        Respectfully submitted,

  /s/ Daniel Lynch
Daniel Lynch (#6202499)
Mindy S. Schwab (#6236299)
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
312-346-1600/312-896-5883 (fax)
dlynch@lynchthompson.com
docketing@lynchthompson.com
*Attorneys for Plaintiff*